1   HANSON BRIDGETT MARCUS VLAHOS & RUDY, LLP
GARNER K. WENG - 191462

2   MICHAEL A. DUNCHEON - 65682
ALEXANDRA V. PERCY - 227251

3   MOHAMMAD WALIZADEH - 233390
333 Market Street, 21st Floor

4   San Francisco, CA  94105-2173
Telephone:   (415) 777-3200

5   Facsimile:   (415) 541-9366
E-mail:   gweng@hansonbridgett.com

6

7   Attorneys for Defendant
VISA INTERNATIONAL SERVICE ASSOCIATION

8            **UNITED STATES DISTRICT COURT**

9        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10                **SAN JOSE DIVISION**

11

| | |
|---|---|
| 12  CRYPTOGRAPHY RESEARCH, INC., | No. C 04 4143 JW (HRL) |
| 13        Plaintiff, | **DEFENDANT VISA INTERNATIONAL SERVICE ASSOCIATION'S OPPOSITION** |
| 14      v. | **TO CRYPTOGRAPHY RESEARCH, INC.'S MOTION TO ENFORCE THE** |
| 15  VISA INTERNATIONAL SERVICE[] ASSOCIATION, | **COURT'S PATENT LOCAL RULES AND PRIOR SCHEDULING ORDERS** |
| 16 | |
|         Defendant. | ***REDACTED FOR PUBLIC FILING*** |
| 17 | |
| 18  AND RELATED COUNTERCLAIM | Date:         July 26, 2005 |
| 19 | Time:        10:00 a.m.<br>Judge:     Hon. Howard R. Lloyd |
| 20 | Dept:        Courtroom 2, 5th Floor |
| 21 | Action Filed:   September 29, 2004<br>Trial Date:     None |

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  ISSUES PRESENTED ........................................................................................ 2

III. ARGUMENT ...................................................................................................... 4

    A.   Plaintiff's motion should be denied because Plaintiff has wholly failed to
meet and confer on this dispute over what documents Visa International
must gather and produce, as required by the Local Rules and the Rules of
Civil Procedure ........................................................................................... 4

        1.   Plaintiff did not meet and confer meaningfully with Visa
International—and actually raises arguments in its motion that it never
even mentioned to Visa International in meet-and-confer efforts ............. 4

        2.   Plaintiff failed to include the required certification that it in good faith
conferred or attempted to confer with Visa International ........................... 7

    B.   Plaintiff's motion should be denied because Visa International has already
fully complied with the Patent Local Rules and the Court's Scheduling Order ..... 7

        1.   The documents at issue are source code or other detailed design-level
technical documentation that shows the operation of particular
elements of accused products by Plaintiff in its infringement
contentions in this case ............................................................................. 7

        2.   Patent Local Rule 3-4(a) requires production only of documents in a
patent respondent's possession, custody, or control ................................... 9

        3.   Visa International has fully complied with Patent Local Rule 3-4(a) ....... 11

    C.   Plaintiff's assertions that Visa International has additional documents that it
has not already produced that are in its possession or control are based on
incomplete or erroneous facts and law—through which Plaintiff fails to meet
its burden on the motion ............................................................................ 12

        1.   Visa International does not possess or control the documents at issue
through the testing process for smart cards that may be branded with
the VISA mark ......................................................................................... 12

            a.   Visa International does not possess additional documents at
issue—because vendors do not submit these types of
documents to the outside testing laboratories or to Visa
International during the testing process for smart cards that
may be branded with the VISA mark ........................................... 12

i

**TABLE OF CONTENTS**
(continued)

**Page**

        b.    Visa International does not control additional documents at issue through the testing process for smart cards that may be branded with the VISA mark ........................................................ 14

            (1)   Visa International does not control additional documents at issue through its contractual relationship with outside testing laboratories ....................................... 14

            (2)   Visa International also does not have control over any additional documents at issue through any alleged principal-agent argument raised by Plaintiff—who gets the law incorrect on this issue ........................................... 16

     2.   Visa International does not possess or control the documents at issue through its other contractual relationships with third parties .................... 17

   D.   Plaintiff's efforts to obtain the documents it claims are at issue under Patent Local Rule 3-4(a) from Visa International are duplicative of the subpoenas that Plaintiff has served on numerous third parties—and unduly burdensome on Visa International ........................................................................................... 19

     1.   Plaintiff has served subpoenas to approximately 13 third parties seeking the same type of information that it seeks through this motion—and in fact has already obtained some of the information from third parties ........................................................................................... 19

     2.   Visa International should not be required to obtain or produce any documents outside of its possession, custody, or control ........................ 20

IV.   CONCLUSION ............................................................................................................. 22

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

4

*7-UP Bottling Co. v. Archer Daniels Midland Co. (In re Citric Acid Litig.),*
191 F.3d 1090 (9th Cir. 1999)..................................................................................... 21, 22

5

*Foothill Capital Corp. v. Clare's Food Market, Inc.,,22*
113 F.3d 1091 (9th Cir. 1997)......................................................................................... 17

6

7

*IXYS Corp. v. Advanced Power Tech., Inc.,*
Case No. 02-03942 MHP, 2004 U.S. Dist. LEXIS 10934, at *7 (N.D. Cal. June 16, 2004)....... 9

8

*Leimbach v. Lane,*
302 B.R. 75 (Bankr. Idaho 2003)..................................................................................... 7

9

10

*Nelson v. Capital One Bank,*
No.C-01-0079, 2001 U.S. Dist. LEXIS 23141, *5 (N.D. Cal. Dec. 17, 2001).......................... 17

11

*Network Caching Tech., LLC v. Novell, Inc.,*
Case No. C-01-2079-VRW, 2002 U.S. Dist. LEXIS 26098, 67 U.S.P.Q.2d (BNA) 1034,
at *11 ................................................................................................................................. 9

12

13

*Renesas Tech. Corp. v. Nanya Tech. Corp.,*
Case NO. C03-05709 JF (HRL) (N.D. Cal. Nov. 10, 2004)........................................................ 9

14

15

*Shuffle Master, Inc. v. Progressive Games, Inc.,*
170 F.R.D. 166 (D. Nev. 1996)......................................................................................... 4, 7

16

*Soto v. City of Concord,*
162 F.R.D. 603 (N.D. Cal. 1995)........................................................................................ 4

17

18

*United States v. International Union of Petroleum & Indus. Workers,*
870 F.2d 1450 (9th Cir. 1989).......................................................................................... 9, 15

19

*Wilson v. Sundstrand Corp.,*
No. 99-C-6946, 2003 U.S. Dist. LEXIS 14356, *32 (N.D. Ill. Aug. 18, 2003) ........................ 15

20

21

22

**Rules**

23

Civil Local Rule 37 ............................................................................................................ 4

24

Federal Rules of Civil Procedure 37 ................................................................................. 4, 5, 7

25

Federal Rule of Civil Procedure 26.................................................................................... 19

26

Patent Local Rule 3-1 ......................................................................................................... 1, 11

27

Patent Local Rule 3-4 ......................................................................................................... *passim*

28

iii

## I.   INTRODUCTION

Defendant Visa International has already fully complied with Patent Local Rule 3-4(a) by producing the documents listed in that rule that are in its possession, custody, or control. But Plaintiff Cryptography Research, Inc. would like to have Visa International do the plaintiff's work by requiring Visa International to gather *additional* documents from third-party manufacturers and vendors—and then produce them to Plaintiff. This is not supported by the law or the facts here.

Visa International is a membership corporation jointly owned by member financial institutions. It manages the VISA® brand through various marketing activities, operates a payment processing system through which it facilitates the processing of payment transactions, and provides other support for the use of VISA-branded credit and payment cards. Its business is financial services. It is not a designer or manufacturer of computer chips or chip cards (also called "smart cards"). It does not make, use, offer to sell, sell, or import in or into the United States the smart cards that are accused of infringement in this action. Nevertheless, Plaintiff has sued Visa International for patent infringement, among other things, including under a theory of active inducement of patent infringement.

Patent Local Rule 3-4(a) requires Visa International, as a party opposing a claim of patent infringement, to produce or make available "[s]ource code, specifications, schematics, flow charts, artwork, formulas, or other documentation *sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant in its Patent L.R. 3-1(c) chart*." (emphasis supplied). Plaintiff tries to greatly expand what is properly encompassed within this rule:

- Plaintiff lists a broad range of documents that it suggests that Visa International must produce—without any discussion of limiting to "sufficient" documents and without any discussion of how its listed documents relate specifically to its claim chart.

- Plaintiff tries to contort Visa process documents and contracts with third parties into purported evidence that Visa International has possession of documents that it does not have. For instance, Plaintiff pulls quotes out of context from documents about which it has no personal knowledge to conclude that some company must have given the documents at issue under Patent Local Rule 3-4(a) to Visa

1

1    International. But its interpretations are incorrect; and it offers no competent
     evidence that any such documents were *actually* given to Visa International. Visa
2    International also provides competent declarations to the contrary.

3    •   Plaintiff also tries to stretch Visa International contracts with third parties into
         purported evidence that Visa International has control over documents in the
4        possession of third parties. But its interpretation of the purported evidence lacks
         foundation and is incorrect; and Visa International provides competent
5        declarations to the contrary. Furthermore, Plaintiff has failed to show that the third
         parties even have the documents at issue.

6
     •   At one point, Plaintiff actually declares that Visa is such a "predominant force in
7        the market" that it is "inconceivable" that "VISA could not obtain possession of
         the [documents being sought by Plaintiff] from its vendors."[1] This is neither law
8        nor evidence and therefore does not support Plaintiff's motion.

9    To sum up, Plaintiff's reading of Patent Local Rule 3-4(a) and expansion of what it would try to

10   deem as being within Visa International's possession or control are unsupported.

11        The documents that Plaintiff seeks are sensitive technical documents—source code and

12   detailed design-level technical documents sufficient to show the specific operation of security

13   measures being implemented by well-known chip and card manufacturers like IBM, Philips,

14   Gemplus, Axalto, and others. These are not the type of documents that Visa International would

15   want or need. And in fact, Visa International does not have these documents—and does not

16   control the documents in the possession of these third-party companies.

17        Moreover, Plaintiff has been serving subpoenas on these and some thirteen total

18   companies—*directly* seeking these sensitive technical documents since at least as early as

19   February 1, 2005. And Plaintiff has received over 25,000 pages of documents in connection with

20   those efforts—some which already fulfill Patent Local Rule 3-4(a). Plaintiff seeking the

21   documents *indirectly* through Visa International by this motion is unreasonably duplicative of its

22   existing subpoenas and unduly burdensome on Visa International.

23        For these reasons and the reasons described more fully in this opposition, Visa

24   International respectfully asks the Court to deny Plaintiff's motion.

25               **II.    ISSUES PRESENTED**

26   A.   Before bringing a motion on disclosure or discovery, the moving party must meet and
          confer through a live conversation in which there is a meaningful exchange on the merits
27        of differing positions. Plaintiff sent a single e-mail explaining its position—and it never

28   _____
     [1] *See* CRI's Motion at 9:22-25.

                                         2

1    responded to certain arguments made by Visa International both before and after that e-
     mail, never told Visa International specifically what it thought was missing after it
2    received the production, and never raised most of the legal or factual issues it now raises
     in this motion. Did Plaintiff satisfy its obligation to meet and confer?

3

**B.**    Patent Local Rule 3-4(a) requires production of documents "sufficient to show the
4         operation of any aspects or elements of an Accused Instrumentality identified by the
          patent claimant in its Patent L.R. 3-1(c) chart." Plaintiff's motion lists a broad range of
5         documents that it seeks under this rule, without explaining their link to its 3-1(c) chart—
          and seems to seek *all* documents rather than *sufficient* documents. What documents are
6         responsive under this rule?

7    **C.**    What responsive documents are in Visa International's possession, custody, or control?

8         **1.**    Visa International has a testing process by which vendors can bring their chips and
                    chip cards to outside testing laboratories before they are approved for use in or as
9                   VISA-branded smart cards.

10                  **a.**    Plaintiff pulls quotes out of documents describing the testing process—of
                             which it has no personal knowledge—and includes no competent testimony
11                           that the documents at issue are in Visa International's possession; and Visa
                             International provides a declaration that the documents at issue are not in
12                           its possession. Has Plaintiff met its burden of showing the documents are
                             in Visa International's possession?

13

14                  **b.**    Plaintiff makes conclusory allegations that Visa International has control
                             over all documents in the possession of testing laboratories. Visa
15                           International provides a declaration and the form of contract it has with
                             outside testing laboratories showing that the vendor controls what
16                           documents can be shared with Visa International. Has Plaintiff met its
                             burden of showing the documents are in Visa International's control?

17        **2.**    ▇▇▇▇▇▇▇▇▇▇▇▇ Redacted ▇▇▇▇▇▇▇▇▇▇▇▇

18
                    ▇▇▇—and pulls quotes out of context to conclude that   Redacted
19                  ▇▇▇ were obligated to give Visa International documents at issue under
                    those agreements. The full context of the agreements shows no such obligation;
20                  and Visa International provides a declaration that the documents at issue were not
                    provided. Has Plaintiff met its burden of showing the documents are in Visa
21                  International's possession or control?

22   **D.**    Unreasonably duplicative or burdensome discovery is prohibited. Since at least as early as
              February, Plaintiff has been subpoenaing the same types of documents it seeks here
23            directly from the third-party companies that manufacture or issue the accused products—
              and it has received over 25,000 pages to date—some of which include technical
24            information sought in this motion. Is Plaintiff's demand for these same documents from
              Visa International under Patent Local Rule 3-4(a) unreasonably duplicative or
25            burdensome?

26

27

28

1

## III.   ARGUMENT

2

**A.     Plaintiff's motion should be denied because Plaintiff has wholly failed to meet and**
3         **confer on this dispute over what documents Visa International must gather and**
          **produce, as required by the Local Rules and the Rules of Civil Procedure.**
4

5          The face of the instant motion confirms that Plaintiff moves the Court under Federal Rule

6    of Civil Procedure 37 and Civil Local Rule 37,[2] both of which required Plaintiff to meet and

7    confer with Visa International before bringing this motion. Similarly, the Court's Standing Order

8    states that it "will not consider discovery motions unless the moving party has complied with

9    Fed.R.Civ.P. 37 and Civil L.R. 37-1(a)."[3] Plaintiff failed to meet and confer.

10         **1.      Plaintiff did not meet and confer meaningfully with Visa International—and**
                    **actually raises arguments in its motion that it never even mentioned to Visa**
11                  **International in meet-and-confer efforts.**

12         Plaintiff was required to meet and confer with Visa International before bringing this

13   motion:

14         The Court will not entertain a request or a motion to resolve a disclosure or discovery
           dispute unless, pursuant to FRCivP 37, counsel have previously conferred for the purpose
15         of attempting to resolve all disputed issues.[4]

16   The meet and confer effort must have been "a 'sincere effort' where both parties presented the

17   merits of their respective positions and meaningfully assessed the relative strengths of each."[5]

18   Merely demanding compliance with a discovery request is not enough; rather, "a live exchange of

19   ideas and opinions is required."[6] In fact, the Local Rules expressly require a live conversation:

20         The mere sending of a written, electronic, or voice-mail communication, however, does
           not satisfy a requirement to "meet and confer" or to "confer." Rather, this requirement can
21         be satisfied only through direct dialogue and discussion—*either in a face to face meeting*
           *or in a telephone conversation.*[7]
22
           Not only was there no live conversation in which the merits were discussed, Plaintiff
23
     never disclosed the core arguments it now raises in its motion to Visa International before
24

25   ───────────────────────
     [2] *See* CRI's Motion at 2:6 (notice of motion stating under what rules the motion is brought).
     [3] *See* United States District Court, Northern District of California, Magistrate Judge Howard R.
26   Lloyd, Standing Order re: Initial Case Management.
     [4] Civ. L.R. 37-1.
27   [5] *See, e.g.,* Shuffle Master, Inc. v. Progressive Games, Inc., 170 F.R.D. 166, 172 (D. Nev. 1996).
     [6] Soto v. City of Concord, 162 F.R.D. 603, 623 (N.D. Cal. 1995).
28   [7] Civil L.R. 1-5(n) (emphasis supplied).

4

bringing this motion. Plaintiff's meet-and-confer efforts can be summarized as follows:

| Summary of Plaintiff's Meet-And-Confer Efforts |
|---|
| • On May 23, 2005, in a telephone call, Plaintiff identified the prospective dispute over Patent Local Rule 3-4(a) and asked for Visa International's position. There was no discussion of the merits of Plaintiff's position.[8]<br>• On May 24, 2005, in an e-mail, Plaintiff responded to Visa International's e-mail explaining its position with an explanation of Plaintiff's position.[9]<br>• Plaintiff did *not* respond to subsequent e-mails from Visa International, which explained Visa International's position further and asked for authority supporting Plaintiff's position.[10]<br>• Plaintiff did *not* try to meet and confer with Visa International after receiving Visa International's document production under Patent Local Rule 3-4(a) on or about June 2, 2005.[11] |

Plaintiff's and Visa International's last known positions can be summarized as follows:

| | Last Position in Meet-and-Confer Discussions[12] | |
|---|---|---|
| | Plaintiff | Visa International |
| Disputed Issue | Visa International must produce Patent L.R. 3-4(a) documents *even if outside* its possession, custody, or control | Visa International must produce Patent L.R. 3-4(a) documents *only within* its possession, custody, or control |
| Reasoning | • Pointed to language of Patent L.R. 3-4(a)<br>• Suggested that Judge Ware ordered Visa International at CMC to talk to its vendors | • Pointed to context of Patent L.R. 3-4(a) as discovery<br>• Responded that CMC did not address Patent L.R. 3-4(a)—and that informal conversation was out of context |

[8] *See* Declaration of Garner Weng iso Opposition ("Weng Decl.") ¶ 3; *see also* Hadden Decl. ¶ 13.
[9] *See* Weng Decl. ¶ 5 & Ex. 2; *see also* Hadden Decl. ¶ 14. Though Judge Lloyd's Standing Order discourages attaching letters between counsel as exhibits to discovery motions, Visa International interpreted this as the Court discouraging counsel from using such letters to show compliance with meet-and-confer requirements; and Visa International asks the Court's indulgence in its attachment of letters to declarations supporting this opposition as evidence that there was *not* compliance.
[10] *See* Weng Decl. ¶ 8.
[11] *See* Weng Decl. ¶ 10.
[12] This information is summarized from e-mails between counsel for the parties. *See* Weng Decl. ¶¶ 4-7 & Ex. 1-3; Hadden Decl. ¶¶ 14-16.

5

| Last Position in Meet-and-Confer Discussions[12] | | |
|---|---|---|
| | Plaintiff | Visa International |
| | • Did not respond to claim of undue burden on Visa International<br>• Did not respond to issues raised re: its third-party subpoenas being duplicative<br><br>• Did not respond to request for authority | • Claimed undue burden from Plaintiff's reading of rule<br>• Claimed Plaintiff's reading also was unreasonably duplicative of Plaintiff's many third-party subpoenas<br>• Requested authority for Plaintiff's position |
| Last Overtures Toward Meeting and Conferring | May 24 e-mail | May 26 e-mail; June 14 e-mail; June 15 e-mail |

As can be seen, Plaintiff did not address many issues or requests raised by Visa International. More importantly, Plaintiff never explained its reasoning at all—given that it never mentioned many of the legal and factual issues it raises in its motion or any of the documents it cites in its motion:

| Issues in Plaintiff's Motion Never Raised in Meet and Confer |
|---|
| • What specific items Plaintiff says are missing from Visa International's production under Patent Local Rule 3-4(a)—which, according to the motion, are now quite broad and include some items that Visa International has already agreed to produce in discussions strictly within the context of Plaintiff's written document requests<br>• Plaintiff's claim that documents at issue are in Visa International's possession—and the documents it cites as evidence for this claim<br>• Plaintiff's claim that documents at issue are in Visa International<br>    o Plaintiff's contractual basis for this claim—and the documents it cites as evidence<br>    o Plaintiff's principal-agent basis for this claim |

Interestingly, whereas Visa International specifically told Plaintiff that it believed Patent Local Rule 3-4(a) required it to produce only those documents in its possession, custody, or

6

1196283.3

control[13]—and that it would do so[14]—Plaintiff now concedes that in its motion but now states that the documents at issue really are in Visa International's possession or control.[15] But Plaintiff never told Visa International that the dispute was now over whether the documents were in Visa International's possession or control—before bringing this motion.

In sum, as Plaintiff has failed to meet and confer in good faith, as required, the Court should deny its motion.

### 2. Plaintiff failed to include the required certification that it in good faith conferred or attempted to confer with Visa International.

Rule 37 of the Federal Rules of Civil Procedure requires Plaintiff to certify its good-faith meet-and-confer efforts:

> The motion must include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action.[16]

The certification must adequately set forth "essential facts sufficient to enable the court to pass a preliminary judgment on the adequacy and sincerity of the good faith conferment between the parties."[17] Failure to submit the certification is sufficient reason to deny the motion.[18] Plaintiff failed to submit the required certification; and its motion should be denied.

### B. Plaintiff's motion should be denied because Visa International has already fully complied with the Patent Local Rules and the Court's Scheduling Order.

#### 1. The documents at issue are source code or other detailed design-level technical documentation that shows the operation of particular elements of accused products accused by Plaintiff in its infringement contentions in this case.

Patent Local Rule 3-4(a) calls for specific detailed technical documentation that shows how an accused product may read on the patents in suit, as specifically alleged by the patent plaintiff:

> With the "Preliminary Invalidity Contentions," the party opposing a claim of patent infringement must produce or make available for inspection and copying:

---

[13] *See* Weng Decl. ¶ 5 & Ex. 1.
[14] *See* Weng Decl. ¶ 5 & Ex. 1, 3.
[15] *See* CRI's Motion § III.B (titled, "Defendant Possesses And Controls The Relevant Information.")
[16] FED. R. CIV. PROC. 37(a)(1)(A); *see also* FED. R. CIV. PROC. 37(a)(1)(B).
[17] *See* Shuffle Master, *supra*, at 171.
[18] *See* Leimbach v. Lane, 302 B.R. 75, 79 (Bankr. Idaho 2003).

7

(a) Source code, specifications, schematics, flow charts, artwork, formulas, or other documentation *sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant* in its Patent L.R. 3-1(c) chart; . . .[19]

The patent claimant's "Patent L.R 3-1(c) chart" is defined as the "chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality . . . ."[20]

Plaintiff unilaterally asserts in its motion— without citation, authority, or explanation— that the documents at issue under Patent Local Rule 3-4(a) are quite broad, including just about any document that shows how any part of any accused product may work:

technical descriptions of the design, implementation, and operation of power-analysis countermeasures; technical specifications; user manuals; tutorials; operating guides; product documentation; certification or approval testing submissions; protection profiles; testing reports; certification documentation; risk implementation reviews; hardware security reviews; chip data sheets; chip block diagrams with explanatory technical descriptions; chip circuit diagrams or PCB layout diagrams; chip application notes; chip simulations/emulation models; chip computer model of IC design/layout; chip HDL; software (OS and/or applet) source code; software functional design, and implementation specifications; software implementation analyses and/or evaluations; software pseudocode; software test suites, unit tests, test scripts; software API documentation; and software flow diagrams.[21]

Incidentally, this is the first time such a list describing what Plaintiff expected has been provided. In any event, that is not what Patent Local Rule 3-4(a) says. The rule refers only to documents sufficient to show the operation of aspects of accused products *identified by the patent claimant in its submitted claim chart*. Yet Plaintiff draws no link between this exhaustive list of documents and its claim chart that defines the documents at issue—and it appears to be asking for all of its listed documents, rather than the Rule's stated "sufficient" documents. Plaintiff is overly inclusive in seeking basic documents along the lines of testing reports, user manuals, and operating guides that do not reach the detail of the specific elements of the products as shown in the claim charts—and it also tries to include detailed technical documents even if they do not relate to the claim chart.

Plaintiff describes its eight patents as claiming "DPA Countermeasures" or "DPA Resistance Inventions," that is, countermeasures to prevent a type of attack known as differential

---

[19] PATENT L.R. 3-4 (emphasis supplied).
[20] PATENT L.R. 3-1(c).
[21] *See* CRI's Motion at 7 n. 3.

8

1   power analysis (or "DPA").[22] Its claim charts accuse certain products of infringing its patents in

2   the way that those products implement DPA countermeasures. The accused products are all smart

3   cards, with one exception where Plaintiff separately accuses software applications or applets

4   compliant with a particular standard (and assumably that run on smart cards). Therefore, the

5   documents at issue under Patent Local Rule 3-4(a) would include source code that implements a

6   DPA countermeasure described in Plaintiff's claim chart—as source code inherently would show

7   the operation—or a detailed design-level technical document that shows specifically how a DPA

8   countermeasure described in Plaintiff's claim chart is implemented on a smart card, assumably

9   such that Plaintiff could review that document against its patents.

10              2.      **Patent Local Rule 3-4(a) requires production only of documents in a patent
                        respondent's possession, custody, or control.**

11

12          The types of documents just discussed in mind, Patent Local Rule 3-4(a) requires

13   production of these documents only to the extent that they are in Visa International's possession,

14   custody, or control. Patent Local Rule 3-4(a) must be read in the context of discovery under the

15   Federal Rules of Civil Procedure[23]—as it is, at its root, a form of discovery mandated by the

16   Court.[24] In the context of discovery and under the Federal Rules of Civil Procedure, a party must

17   produce only those documents, information, or records that are in that party's ***possession, custody***

18   ***or control***.[25]

19   _____

20   [22] *See, e.g.,* First Amended Complaint, filed on or about March 7, 2005, at ¶¶ 23, 24 (collectively
     referring to the eight patent as the "Countermeasure Patents" and stating that "The
21   Countermeasure Patents claim the DPA Resistance Inventions.")
     [23] *See* CA court order regarding "Scope, Purpose & Construction of Civil Local Rules," section 1-
22   2(b), (Lexis Citation CA Orders 2001-6) ("[Local Rules] shall be construed so as to be ***consistent***
     ***with the Federal Rules*** and to promote the just, efficient, speedy and economical determination
23   of every action and proceeding." (emphasis supplied.)).
     [24] *See, e.g., IXYS Corp. v. Advanced Power Tech., Inc.,* Case No. 02-03942 MHP, 2004 U.S. Dist.
     LEXIS 10934, at *7 (N.D. Cal. June 16, 2004) ("The [Patent] Local Rules exist to further goal of
24   full, timely discovery . . .") (case also cited by Plaintiff); *see also, e.g., Renesas Tech. Corp. v.
     Nanya Tech. Corp.,* Case NO. C03-05709 JF (HRL) (N.D. Cal. Nov. 10, 2004) (referring to
25   Patent Local Rules as "a discovery device," though in specific reference to Patent Local Rule 3-
     1); *Network Caching Tech., LLC v. Novell, Inc.,* Case No. C-01-2079-VRW, 2002 U.S. Dist.
26   LEXIS 26098, 67 U.S.P.Q.2d (BNA) 1034, at *11 (referring to Patent Local Rules as "a
     discovery device," though in specific reference to Patent Local Rule 3-1) (N.D. Cal. Aug. 13,
27   2002).
     [25] FED. R. CIV. P. 34(a) (emphasis supplied); *see also United States v. International Union of
28   Petroleum & Indus. Workers,* 870 F.2d 1450, 1452 (9th Cir. 1989).

                                                    9

1   Though Plaintiff asserted in meet-and-confer discussions that Visa International had to

2   produce documents regardless of whether they were within Visa International's possession,

3   custody, or control, Plaintiff has backed off of that position for the first time in its motion[26]—now

4   asserting instead that the documents are in fact within Visa's possession or control.[27]

5   Accordingly, the parties appear to agree that the issue boils down to whether the documents at

6   issue are within Visa International's possession or control.

7   And while Plaintiff suggests that this issue was addressed in the last Case Management

8   Conference before the Court and suggests that Judge Ware ordered Visa International at that

9   conference to "consult its business partners and obtain information of the type contemplated by

10   Rule 3-4(a)",[28] this differs from Visa International's recollection of the case management

11   conference.[29] Indeed, Plaintiff tries to tie this idea of "consult[ing] its business partners" directly

12   to Judge Ware's order regarding the timing of compliance Patent Local Rule 3-4(a)—putting the

13   two in the same sentence on two separate occasions.[30] Looking past Plaintiff's brief, however, the

14   underlying declaration does not tie these events together. Instead, Plaintiff's counsel states that, at

15   the conference, "Judge Ware . . . indicated to Visa that it *may* need to get together with its

16   vendors to collect the information on the accused cards"[31] and in a separate paragraph notes that

17   *two days later,* Judge Ware issued his order on case scheduling—including one sentence within

18   his four-page order setting June 2, 2005 as the date for compliance with Patent Local Rule 3-4.[32]

19   Any such discussions at the conference about third parties were general discussions of the

20   complexity of the case and what Visa International would have to do to prepare its defense—and

21   were not in the context of any particular Patent Local Rule or discovery obligation. In fact, by

22   Visa International's memory, there was *no* discussion in the case management conference

23   [26] *See* CRI's Motion at 5:10-:12 (acknowledging that Patent Local Rule 3-4(a) "exists to further
      the goal of full, timely discovery"), 5:18-:19 ("ALl relevant documents within VISA's
24   possession, custody, or control are potentially discoverable.").
      [27] *See* CRI's Motion at 6:8-:9 (characterizing the documents at issue as within "VISA's
25   possession and control"), at 7:1-111:6 (numerous arguments that Visa International allegedly
      possesses and controls the relevant information).
26   [28] *See* CRI's Motion at 6:9-:10, :25-:27.
      [29] *See* Weng Decl. ¶ 2.
27   [30] *See* CRI's Motion at 6:9-:10, :25-:27.
      [31] *See* Hadden Decl. ¶ 11 (emphasis supplied).
28   [32] *See* Hadden Decl. ¶ 12.

10

1    specifically regarding Patent Local Rule 3-4 or specifically regarding whether documents in the

2    hands of any third parties were nevertheless within Visa International's possession, custody, or

3    control.[33] There is no such issue raised in the parties' Joint Case Management Statement.[34] Nor is

4    there any such issue addressed in the Court's order, which states only:

5        No later than Thursday, June 2, 2005, Defendant shall serve on all parties Preliminary
         Invalidity Contentions and must produce and make available for inspection and copying
6        the documents described in Patent L.R. 3-4.[35]

7    There is no mention in the order of what Visa International has to do in order to comply with

8    Patent Local Rule 3-4.[36] Accordingly, the Court should interpret Patent Local Rule 3-4(a) on a

9    clean slate and find that Visa International does not have to produce any documents outside of its

10   possession, custody, or control.

11        **3.    Visa International has fully complied with Patent Local Rule 3-4(a).**

12        As far as source code or detailed documentation showing exactly how a product

13   implements a DPA countermeasure vis a vis Plaintiff's claim charts under Patent Local Rule 3-

14   1(c), Visa International had source code for one particular accused product identified in Plaintiff's

15   claim charts—and it produced that source code.[37] Plaintiff acknowledges production of this

16   source code.[38]

17        That Visa International does not have more than this is not surprising—because Visa

18   International had no reason to have the source code or design-level technical documentation from

19   other companies. This type of documentation is not used in connection with any testing of a chip

20   or card that may be used in or as a VISA-branded smart card.[39] And this type of documentation is

21   not used in any other collaboration or relationship Visa International has with other companies

22   that Plaintiff raises as issues, such as ███████Redacted███████.[40] Accordingly, Visa

23   International has produced to Plaintiff the source code and design-level technical documentation

24   _____

25   [33] *See* Weng Decl. ¶ 2.
     [34] *See* Further Case Management Statement, filed on or about April 4, 2005.
     [35] Order Scheduling Patent Claims Construction Proceedings (Apr. 20, 2005).
26   [36] *See id.*
     [37] *See* Weng Decl. ¶ 9 & Ex. 4.
27   [38] *See* CRI'S Motion at 4:4-:5; Hadden Decl. ¶ 12 at 3:13-:16.
     [39] *See* Declaration of Ross Snailer iso Opposition ("Snailer Decl.") ¶¶ 3, 5.
28   [40] *See* Declaration of James Lee iso Opposition ("Lee Decl.") ¶ 2-4.

1   of Patent Local Rule 3-4(a) that was in its custody, possession, or control; and it has therefore

2   complied with Patent Local Rule 3-4(a).

3        To the extent that Plaintiff now tries to claim that other types of documents are swept into

4   Patent Local Rule 3-4(a), Plaintiff has never mentioned this before this motion. And to the extent

5   other types of documents are covered by Plaintiff's written requests for documents, those requests

6   are outside the scope of this motion.[41] Moreover, any such issues regarding documents that

7   actually are in Visa International's possession, custody, or control are likely to be moot shortly.

8   For instance, before the Patent Local Rule 3-4(a) issue arose between the parties, Visa

9   International told Plaintiff that it was in process of producing documents such as testing reports in

10  connection with discovery, subject to making sure it respected any confidentiality obligations that

11  may exist regarding the documents.[42] So Visa International is already in process of producing

12  those higher-level documents in the course of regular discovery, apart from the Patent Local

13  Rules.

14       In sum, Visa International has already complied with the requirements of Patent Local

15  Rule 3-4(a), this motion should be denied.

16  **C.**    **Plaintiff's assertions that Visa International has additional documents that it has not**
    **already produced that are in its possession or control are based on incomplete or**
17  **erroneous facts and law—through which Plaintiff fails to meet its burden on the**
    **motion.**
18
    Plaintiff argues that Visa International possesses and controls additional documents that
19
    must be produced under Patent Local Rule 3-4(a) along two lines—both of which fail.
20

21
        **1.**    **Visa International does not possess or control the documents at issue through**
22            **the testing process for smart cards that may be branded with the VISA mark.**

23          **a.**    **Visa International does not possess additional documents at issue—**
                **because vendors do not submit these types of documents to the outside**
24              **testing laboratories or to Visa International during the testing process**
                **for smart cards that may be branded with the VISA mark.**
25
    Plaintiff argues that Visa International possesses the source code or other design-level
26

27  ―――――――――――――――――――
    [41] *See* CRI's Motion at 2 (notice of motion stating that the only relief sought is to compel
28  compliance with Patent Local Rule 3-4(a)).
    [42] *See* Weng Decl. ¶ 3.

1   technical documentation for accused products at issue through the testing process by which chips

2   or cards are approved for incorporation into or use as VISA-branded smart cards—but Plaintiff

3   does this with conclusory allegations of which it has no personal knowledge. This is insufficient

4   to meet Plaintiff's burden on this motion.

5          For instance, Plaintiff pulls quotes and cites out of the document titled, *Chip Card*

6   *Products: Testing and Approval Requirements,* even purporting to characterize what the meaning

7   of terms as used in the document are.[43] But Plaintiff lays no foundation for any knowledge of

8   what this document means. Its entire foundation is the declaration of its attorney attaching the

9   document stating that "Attached hereto as Exhibit 3 is a true and correct copy of VISA Industry

10  Services' "Chip Card Products: Testing and Approval Requirements," dated April 2005.[44] This is

11  not a foundation for any actual knowledge.

12         In fact, on its face, this document states:

13         This document does not create any binding obligations for Visa or any third party
           regarding testing services or Visa approval, or which obligations exist (if at all), pursuant
14         to separate written agreements executed by Visa and such third parties.

15  In other words, this document has plainly stated limits; and Plaintiff really has no idea as to what

16  documents any vendors actually give to testing laboratories as part of any approval process

17  involving Visa International. Accordingly, Plaintiff is forced to try to pull quotes from this

18  document without knowing what the meaning of the terms are, without knowing what happens in

19  actual practice, and without knowing whether any documents that are provided during testing

20  actually match up with its claim charts—as required for them to become at issue under Patent

21  Local Rule 3-4(a).

22         This is no evidence at all. And this lack of evidence is not from Plaintiff's lack of

23  opportunity to find evidence. As discussed further below,[45] Plaintiff has served at least 13

24  document subpoenas on third parties[46]—many as long ago as early February—and has obtained

25  over 25,000 pages of documents from these third parties to date.[47] The subpoenaed parties include

26  [43] *See* CRI's Motion at 7:6-:9, 7:12-:22, *:1-:21.
    [44] *See* Hadden Decl. ¶ 4 & Ex. 3.
27  [45] *See, infra,* § III.D.1.
    [46] *See* Weng Decl. ¶ 13 & Ex. 6.
28  [47] *See* Weng Decl. ¶ 14.

13

1    vendors who have been involved in the testing process. And Plaintiff certainly asked for

2    documents relating to the testing process of Visa International.[48]

3         Yet Plaintiff produces no documents that show that chip or card manufacturers were

4    giving the outside testing laboratories—or Visa International—anything like source code or the

5    design-level technical documentation that would show exactly how they implemented DPA

6    countermeasures. Plaintiff produces no declaration or testimony of any chip or card manufacturer

7    on what documents they gave to any outside testing laboratory or to Visa International. And

8    Plaintiff produces no declaration or testimony from any outside testing laboratory on these points.

9         On the other hand, Visa International is familiar with the testing process—and with this

10   opposition provides a declaration of an employee familiar with the testing process. And he

11   explains that the type of source code or design-level technical documentation that would show

12   exactly how they implemented DPA countermeasures is exactly *not* what is provided by vendors

13   in connection with the testing process.[49] In fact, that level of detail would never be needed. The

14   testing is all "black box" testing, meaning that when the outside testing laboratory tests for DPA

15   resistance, it simply tries to attack the product with DPA techniques—and see how the product

16   fares.[50] This does not call for any documentation showing the source code or other deep inner

17   workings of any DPA countermeasures for a particular product.

18        Neither the testing laboratories nor Visa International receive the source code or design-

19   level technical documentation at issue here; and therefore, that type of documentation is outside

20   of Visa International's possession.

21                    **b.      Visa International does not control additional documents at issue**
                               **through the testing process for smart cards that may be branded with**
22                             **the VISA mark.**

23                         **(1)     Visa International does not control additional documents at**
                                   **issue through its contractual relationship with outside testing**
24                                 **laboratories.**

25        As an initial matter, this point is moot—because the testing laboratories do not have the

26   ─────────────────
     [48] *See, e.g.,* Weng Decl. Ex. 6 (as just one example, subpoena to Axalto dated February 1, 2005
     asking for "All APPROVAL PROCESS DOCUMENTATION relating to DPA
27   COUNTERMEASURES or DPA TESTING in VISA SMART CARDS").
     [49] *See* Snailer Decl. ¶ 7.
28   [50] *See* Snailer Decl ¶ 13.

                                            14

1   source code or design-level technical documentation on DPA countermeasures through the testing

2   process any more than Visa International does.

3       Nevertheless, to rebut Plaintiff's arguments, "[c]ontrol is defined as the legal right to

4   obtain documents upon demand."[51] "The party seeking production of the documents bears the

5   burden of proving that the opposing party has such control."[52] As Plaintiff acknowledges, the

6   legal right to obtain documents upon demand is established by an "unfettered contractual right of

7   access to the information."[53]

8

9

10

11                          REDACTED

12

13

14

15                        REDACTED

16

17

18                        REDACTED

19   Visa International lacks unfettered access to documents kept by the outside testing laboratories—

20   and therefore lacks control over those documents for purposes of disclosure here. So even if the

21   outside testing laboratories did have documents at issue in this motion, the documents are outside

22   of Visa International's control.

23

24   _____

25   [51] *United States v. International Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989).
     [52] *Id.*

26   [53] *See* CRI's Motion at 23-:24 (citing *Wilson v. Sundstrand Corp.*, No. 99-C-6946, 2003 U.S. Dist. LEXIS 14356, *32 (N.D. Ill. Aug. 18, 2003); *see Wilson, supra,* at *32-*33.

27   [54] *See* Snailer Decl. ¶ 6 & Ex. 1 (███████REDACTED███████) (emphasis supplied).

28   [55] *Id.* (emphasis supplied).

1

2          **(2)    Visa International also does not have control over any
                    additional documents at issue through any alleged principal-
3                   agent argument raised by Plaintiff—who gets the law incorrect
                    on this issue.**

4

5          Again, this issue is moot because the outside testing laboratories do not have the

6    documents at issue here. Putting that aside, Plaintiff then falls back to an argument that Visa

7    International has control over the documents within the laboratories' possession because of an

     alleged principal-agent relationship. But Plaintiff gets the law on this wrong.

8
           In its motion, Plaintiff states that principals have control over documents in the possession
9
     of their agents:
10
               In a ***principal/agent*** relationship, it is presumed that the ***principal*** has control over
11             documents in the possession of its ***agent***.  See *Nelson v. Capital One Bank*, No.C-01-
               0079, 2001 U.S. Dist. LEXIS 23141, *5 (N.D. Cal. Dec. 17, 2001).[56]
12
     But in the only case that Plaintiff cites, the applicable language applies strictly to parent and
13
     subsidiary companies—not principals and agents broadly:
14
               In ***parent-subsidiary*** situations, while some courts look to a variety of factors concerning
15             "control," the Ninth Circuit has applied a per se test wherein, "[a] corporation must
               produce documents possessed by a ***subsidiary*** that the ***parent*** corporation owns or wholly
16             controls."[57]

17   As this is has no application to Visa International and the outside testing laboratories here,

18   Plaintiff's authority is unpersuasive here.

19         In any event, Visa International and the outside testing laboratories are not in a principal-

20   agent relationship. Plaintiff also understates the law on how to determine whether there *is* a

21   principal-agent relationship. In its motion, Plaintiff states:

22             An agency relationship is recognized where an agent has the authority to act for and in
               place of the principal, and where there is a sufficient degree of control exercised by the
23             principal over the activities of the agent. *Foothill Capital Corp. v. Clare's Food Market,
               Inc.*, 113 F.3d 1091, 1099 (9th Cir. 1997).[58]
24

25   But the Ninth Circuit opinion that Plaintiff cites is quite a bit more specific, noting that the

26   _____

27   [56] *See* CRI's Motion at 10:19-:22 (emphasis supplied).
     [57] *See Nelson v. Capital One Bank*, Case No.C-01-0079, 2001 U.S. Dist. LEXIS 23141, *5 (N.D.
28   Cal. Dec. 17, 2001) (emphasis added) (citations omitted).
     [58] *See* CRI's Motion at 10:15-:18.

VISA INTERNATIONAL'S OPPOSITION TO MOTION TO ENFORCE PATENT
LOCAL RULES (CASE NO. C 04 4143 JW (HRL))                                          1196283.3

1  authority to act for and in place of the principal is specific to binding the principal to a legal

2  relationship:

3      One of the chief characteristics of an agency relationship is the 'authority to act for and in

4      the place of the principal *for the purpose of bringing him or her into legal relations with third parties*.[59]

5  This additional clarity would of course alter the analysis of any purported principal-agent

6  relationship between Visa International and the outside testing laboratories significantly.

7      In fact, the contracts between Visa International and the outside testing laboratories bear

8  out that there is not principal-agent relationship.

9

10

11                          REDACTED

12

13

14                                                      These statements support

15  that the outside testing laboratories is not able to bind Visa International to legal obligations with

16  third parties, whether the vendors or anyone else. There is no principal-agent relationship, and

17  there is no control.

18      **2.    Visa International does not possess or control the documents at issue through its other contractual relationships with third parties.**

19

20      Plaintiff also argues that that Visa International possesses and controls the source code or

21  other detailed technical documentation at issue through "its intellectual property licensing

22  agreements and joint development agreements with card manufacturers and chip suppliers"[60] —

23  but Plaintiff again uses conclusory allegations of which it has no personal knowledge. And this

24  again is insufficient to meet Plaintiff's burden on this motion.

25                          REDACTED

26

27  [59] *Foothill Capital Corp. v. Clare's Food Mkt.* (In re Coupon Clearing Serv.), 113 F.3d 1091, 1099 (9th Cir., 1997).

28  [60] *See* CRI's Motion at 8:22-:24.

17

1

2                                    REDACTED

3

4

5

6        Plaintiff starts by arguing the first confidentiality agreement:

7

8                                    REDACTED

9

10   This is pulled entirely out of context. What the agreement says is:

11

12                                   REDACTED

13

14   And the context is:

15

16

17                                   REDACTED

18

19

20                                   REDACTED

21

22

23

24        Plaintiff continues on a similar path with the second confidentiality agreement

25   _____
     [61] *See* CRI's Motion at 8:24-9:6.
26   [62] *See* CRI's Motion at 9:7-:17.
     [63] *See* CRI's Motion at 8:27-9:6 (quoting agreement) (emphasis supplied).
27   [64] *See* Hadden Decl. Ex. 11 (agreement at 2 (            REDACTED            )).
     [65] *See* Hadden Decl. Ex. 11 (agreement at 1 (            REDACTED
28                   )).
     [66] *See* Hadden Decl. Ex. 11 (agreement ¶ 3 at 2).

                                         18
     ───────────────────────────────────────────────────────────────────
     VISA INTERNATIONAL'S OPPOSITION TO MOTION TO ENFORCE PATENT          1196283.3
     LOCAL RULES (CASE NO. C 04 4143 JW (HRL))

REDACTED

REDACTED

This is a very similar removal from context.

REDACTED

Moreover, the face of these two agreements does not tell us what documents the two companies may have actually given Visa International in the course of the agreements. But Visa International provides with its opposition a declaration from an employee familiar with the two agreements; and he confirms that Visa International never received the type of source code or detailed technical documentation that would show exactly how one of these companies implemented DPA countermeasures in the course of the agreements.[69]

Visa International does not possess or control the documents at issue through the types of agreements that Plaintiff mentions in its motion; and the motion should be denied.

**D.    Plaintiff's efforts to obtain the documents it claims are at issue under Patent Local Rule 3-4(a) from Visa International are duplicative of the subpoenas that Plaintiff has served on numerous third parties—and unduly burdensome on Visa International.**

**1.    Plaintiff has served subpoenas to approximately 13 third parties seeking the same type of information that it seeks through this motion—and in fact has already obtained some of the information from third parties.**

The Federal Rules of Civil Procedure prohibit discovery that is "unreasonably cumulative or duplicative" or unduly burdensome, among other things.[70] In Plaintiff's motion, however,

---

[67] *See* CRI's Motion at 9:9-9:13 (quoting agreement) (emphasis supplied).
[68] *See* Hadden Decl. Ex. 12 (Exhibit B to agreement).
[69] *See* Lee Decl. ¶¶ 2, 3.
[70] FED. R. CIV. PROC. 26(b)(2).

19

1    Plaintiff fails to mention that it has already served at least thirteen subpoenas on third parties[71]—

2    and that it has obtained on the order of over 25,000 pages of documents from card or chip

3    manufacturers such as Axalto, Gemplus, Philips, and IBM.[72] Plaintiff has actually already

4    received documents that is seeking again, here in this motion; and its subpoenas cover the same

5    documents that it seeks here in this motion.

6         By Visa International's rough count, nearly 10,000 pages of the over 25,000 pages already

7    produced by third parties to Plaintiff contain some technical information. Some appears to be

8    source code; and it appears that this technical information describes the operations of products at

9    issue in this case relative to Plaintiff's claim charts. In fact, Plaintiff used documents from the

10   production from IBM to supplement its invalidity contentions in this case.[73] So Plaintiff already

11   has some of the very documents it seeks to have the Court order Visa International to produce

12   (though Visa International did not have them in its possession, custody, or control except through

13   third-party production to Plaintiff in this case).

14        And Plaintiff's thirteen subpoenas seek the exact same documents and information as it

15   seeks here under the instant motion. As just a few small examples, its subpoena to IBM asks for:

16            1.     For each of YOUR VISA SMART CARD PLATFORMs, all documents
         relating to which DPA COUNTERMEASURES such PLATFORM employs.
17            2.     For each of YOUR VISA SMART CARD PLATFORMs, all documents
         relating to the design, implementation, operation, evaluation, and testing of each DPA
18       COUNTERMEASURE employed by such PLATFORM.

                 . . .
19            9.     All documents relating to the research, development, implementation,
         testing, or evaluation of DPA COUNTERMEASURES for use in YOUR SMART CARD
20       PLATFORMs, specifically including ENGINEERING MATERIALS.
              10.    All documents relating to CRI, the DPA RESISTANCE INVENTIONS or
21       the COUNTERMEASURE PATENTS, specifically including use of the DPA
         RESISTANCE INVENTIONS or the COUNTERMEASURE PATENTS in SMART
22       CARD PLATFORMS.[74]

23
     And Plaintiff's subpoena to Philips asks for:
24
              1.     For each of YOUR VISA SMART CARD CHIPs, all documents relating to
25       which DPA COUNTERMEASURES such CHIP employs.
              2.     For each of YOUR VISA SMART CARD CHIPs, all documents relating to
26   _____

27   [71] See Weng Decl. ¶ 13 & Ex. 6.
     [72] See Weng Decl. ¶ 14.
     [73] See Weng Decl. ¶ 16 & Ex. 8-10.
28   [74] See Weng Decl. Ex. 6 (subpoena to IBM).
                                        20

the design, implementation, operation, evaluation, and testing of each DPA
COUNTERMEASURE employed by such CHIP.
. . .

> 5.    All documents relating to the research, development, implementation,
> testing, or evaluation of DPA COUNTERMEASURES for use in YOUR SMART CARD
> CHIPs, specifically including ENGINEERING MATERIALS.
>
> 6.    All documents relating to CRI, the DPA RESISTANCE INVENTIONS or
> the COUNTERMEASURE PATENTS, specifically including use of the DPA
> RESISTANCE INVENTIONS or the COUNTERMEASURE PATENTS in SMART
> CARD CHIPs.[75]

And many of the other subpoenas reveal similar categories of subpoenaed documents.

In other words, Plaintiff is moving to compel Visa International to try to make Visa

International produce the same documents that it has already subpoenaed from other companies—

some that it subpoenaed as long ago as early February—and some that it already has in its

possession from the document productions of these third parties. This needlessly duplicates

efforts and wastes resources of the parties, of third parties, and of the Court. For these reasons,

among others, Plaintiff's motion should be denied.

### 2.    Visa International should not be required to obtain or produce any documents outside of its possession, custody, or control.

Though Plaintiff seems to have conceded this motion is indeed an issue of possession,

custody, or control, it includes enough looser language in its motion to merit underscoring that

Visa International should not be required to obtain any documents outside of its possession,

custody, or control.

Plaintiff at times moves into hyperbole (without citation or support) on what Visa

International may be capable of achieving:

> VISA is a predominant force in the market for financial smart cards. No vendor can
> market any VISA Smart Cards or VISA Smart Card components without VISA security
> testing and approval. It is inconceivable that VISA does not possess the discovery
> contemplated under Patent L.R. 3-4(a), *or that VISA could not obtain possession of it
> from its vendors. It is likewise inconceivable that VISA-approved testing laboratories
> would deny VISA a request for information* such as that contemplated under Patent L.R.
> 3-4(a). . . .[76]

These "inconceivable" arguments are dangerous—apart from being grounded in no evidence,

they seem to promote departure from established legal principles. In a somewhat similar situation,

---

[75] *See* Weng Decl. Ex. 6 (subpoena to Philips).
[76] *See* CRI's Motion at 9:22-:27 (emphasis supplied).

21

a party seeking discovery through a subpoena asked the Ninth Circuit to require the subpoenaed party to produce documents based on its "practical ability to obtain the requested documents" from the entities in possession—rather than whether it has "legal control" over the documents.[77] The Ninth Circuit rejected this approach and held that the party responding to discovery must have legal control over the documents.[78]

The Ninth Circuit holding applies well here in part because Plaintiff's hyperbole is all wrong. Companies like Philips, IBM, Gemplus, Axalto, Infineon, and other companies potentially at issue are not companies incapable of saying "no" or incapable of denying a request from Visa International. In fact, not only is it ***conceivable*** that these companies would say no, it is more than likely. Source code and detailed design-level technical documentation can be extremely sensitive or even trade-secret to these companies. Putting Visa International in the position of having to ask these companies for their source code and design-level technical documentation on the inner-most workings of their technology is an undue burden. The Ninth Circuit described the problems of imposing such a burden:

> ***Ordering a party to produce documents that it does not have the legal right to obtain will oftentimes be futile, precisely because the party has no certain way of getting those documents.*** Varni claims that C&L-US has the practical ability to obtain documents from C&L-Switzerland because C&L-Switzerland has voluntarily furnished C&L-US with documents and information in the past. With respect to the ECAMA documents, however, C&L-US asked C&L-Switzerland to produce the documents, but C&L-Switzerland refused. There is no mechanism for C&L-US to compel C&L-Switzerland to produce those documents, and it is not clear how Varni wants C&L-US to go about getting the ECAMA documents, since C&L-Switzerland could legally—and without breaching any contract—continue to refuse to turn over such documents. Because C&L-US does not have legal control over C&L-Switzerland's documents, Varni could not compel C&L-US to produce those documents.[79]

If Plaintiff tries to ask the Court to order Visa International to gather documents outside of its possession, custody, or control, it is really just trying to get Visa International to do its work—and bear its burden and expense. Visa International respectfully asks the Court to follow the lead of the Ninth Circuit and deny any such request from Plaintiff.

---

[77] *See 7-UP Bottling Co. v. Archer Daniels Midland Co. (In re Citric Acid Litig.)*, 191 F.3d 1090, 1107 (9th Cir. 1999)
[78] *Id.*
[79] *See id.* at 1108 (emphasis supplied).

1

## IV.   CONCLUSION

2   Plaintiff's Motion to Enforce the Court's Patent Local Rules and Prior Scheduling Orders

3   should be denied because:

4   • Plaintiff failed to meet and confer with Visa International on the subject of the motion as required under the Local Rules and the Federal Rules of Civil
5   Procedure—not even mentioning to Visa International many of the factual and legal assertions set forth in its motion before bringing it;

6
7   • Visa International has already complied with Patent Local Rule 3-4(a) in providing the documents in its possession, custody, or control that are sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by
8   Plaintiff in its Patent L.R. 3-1 (c) chart;

9   • Plaintiff failed to meet its burden on its motion to establish that there are any additional documents that are required under Patent Local Rule 3-4(a) that are in
10   Visa International's possession, custody, or control; and

11   • Plaintiff's attempt to obtain the documents sought by its current motion is unreasonably duplicative of the thirteen subpoenas it has already served on third
12   parties to date—and unduly burdensome on Visa International, especially considering that Plaintiff already has or may have already negotiated for the
13   documents sought by this motion directly from the manufacturers of the products at issue.

14

15   For these reasons and for the reasons described more fully in this opposition (and its supporting

16   declarations), and based on the entire record, Visa International respectfully asks the Court to

17   deny Plaintiff's motion.

18

19                                   Respectfully submitted,

20   DATED: July 1, 2005              HANSON BRIDGETT MARCUS
                                      VLAHOS & RUDY, LLP
21

22                                   By: _____
23                                      GARNER K. WENG
                                        MICHAEL A. DUNCHEON
24                                      ALEXANDRA V. PERCY
                                        MOHAMMAD WALIZADEH
25                                      Attorneys for Defendant
                                        VISA INTERNATIONAL SERVICE
26                                      ASSOCIATION

27

28

23