*E-filed 8/4/05*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CRYPTOGRAPHY RESEARCH, INC, <br><br> Plaintiff, <br><br> v. <br><br> VISA INTERNATIONAL SERVICE ASSOCIATION, <br><br> Defendants. | Case No. C04-04143 JW (HRL) <br><br> ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL NON-PARTY GEMPLUS CORP. TO PRODUCE DOCUMENTS AND THINGS UNDER SUBPOENA DUCES TECUM |

On August 2, 2005, the court heard plaintiff's motion to compel non-party Gemplus Corp. to produce documents pursuant to a subpoena duces tecum. Based on the arguments of counsel and the papers submitted, the court issues the following order.

**BACKGROUND**

In this patent infringement action, plaintiff Cryptography Research, Inc. ("CRI") accuses Visa International ("Visa") of unlawfully using CRI's patented software applications in Visa's Smart Card debit and credit cards. In 1998, CRI licensed to Visa a security software application for use in Visa Smart Cards that protects against "differential power analysis" ("DPA"), a technique used by hackers to breach security measures implemented on the cards. CRI alleges that Visa continued to promulgate the use of CRI's technology among its microchip and card manufacturers after it cancelled the licensing agreement with CRI, thereby inducing infringement of CRI's patents.

To support its claims against Visa, CRI subpoenaed documents from non-party Gemplus Corp. ("Gemplus"). Gemplus is the wholly-owned U.S. subsidiary of Gemplus International Service Association ("GISA"), a Luxembourg-based manufacturer and developer of Smart Card microchips and technology. Gemplus manufactures the actual credit and debit cards for Visa and its member banks by embedding microchips into plastic cards and affixing logos, holograms and other details. As a result of this business relationship with Visa, Gemplus possesses information about Smart Card technology that CRI believes is material to this lawsuit.

Gemplus has complied with parts of CRI's subpoena, but has either refused, or claims it is unable to produce documents responsive to all of the requests. After several meet and confer attempts, CRI moved this court to compel responses.

The motion raises three primary issues for the court's determination: (1) whether Gemplus should be ordered to produce documents within the possession of its parent and sister corporations; (2) whether CRI's document requests Nos. 6, 7 and 9 are overly broad, and to what extent Gemplus must comply with them; and (3) whether CRI should pay Gemplus's attorney's fees associated with the subpoena and motion. These three issues are discussed in turn below.[1]

**I.    Does Gemplus Control Documents Possessed by GISA and its Sister Corporations?**

**A.    Legal Standard**

A party served with a subpoena is required to produce documents or records that are in its "possession, custody, or control." FED. R. CIV. P. 45(a). Documents not actually possessed by the subpoenaed party may be considered within its control if the party has "the legal right to obtain the documents on demand." *In re Citric Acid Litigation*, 191 F.3d 1090, 1107 (9th Cir. 1999).

One way this "legal right" condition can be met is through a parent/subsidiary corporate relationship. *United States v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989) ("A corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls."). However, the converse proposition - that a wholly

---

[1] CRI also complains that Gemplus has been slow to produce documents that were agreed upon during the meet and confer process. To that end, Gemplus should promptly produce documents it has agreed to produce.

2

owned subsidiary must produce documents possessed by its parent corporation - does not necessarily follow, and requires a higher factual showing.

To make this determination, courts look to the relationship between the corporations, including whether they have interlocking corporate structure and management, whether they operate as a single unit in all aspects of the relevant business, whether they have identical stockholders and directors, whether the subsidiary acted as the agent of the parent in the relevant transaction, whether the subsidiary can secure documents from the parent to meet its own business needs, and whether the subsidiary has some ownership interest in the parent. *See Gerling Int'l Ins. Co. v. Commissioner of Internal Revenue*, 839 F.2d 131, 140-41 (3d Cir. 1988).[2]

The party seeking production of the documents bears the burden of proving that such control exists. *Int'l Union of Petroleum and Indus. Workers*, 870 F.2d at 1452.

**B.    Parties' Arguments**

CRI offers various facts to prove that Gemplus has "control" over information possessed by its parent corporation:

- A contract between Visa USA and Gemplus states that microchips will be provided by Gemplus' parent or sister corporation. *See* Schumann Decl. Ex. 5 at G00450, 455-56.

- The president of Gemplus sits on the General Management Committee of GISA, a committee responsible for aspects of GISA strategy, finances and operations. *See id*. Ex. 8 at 4.

- Gemplus and GISA share some communication and information technology systems (including elements of manufacturing, finance and logistics functions). *See id*. Ex. 8 at 7.

- "[GISA's] manufacturing and research and development activities are organized on a global basis, while [its] sales and marketing activities are organized on a regional basis." *See id.* Ex. 9 at 60.

CRI interprets these facts to mean that Gemplus has the power to bind GISA in a contract, that it can draw on the resources of GISA to meet its own business needs, that it exercises shared

---

[2] A showing that the subsidiary is the "alter ego" of the parent corporation is another possible way to prove that this "legal right" exists. *Id.* at 140-141.

3

control over GISA, and that the companies have interlocking management. CRI claims that these factors, in addition to GISA's ownership of Gemplus, and the parent's consolidated financial statements, are sufficient to satisfy the Ninth Circuit "legal right" test for control.[3]

In opposition, Gemplus argues that CRI mistakenly relies on the "practical ability" test, rather than the "legal right" test. Gemplus asserts that it is an entirely separate corporate entity from GISA, and that CRI's evidence is insufficient prove that Gemplus has the legal right to obtain upon demand documents in GISA's possession. Finally, Gemplus argues that CRI should seek documents from GISA through procedures for international discovery set out in Hague Convention.

**C.     Analysis**

The legal right to obtain documents on demand and the practical ability to obtain documents on demand are two distinct things. Legal right suggests an ownership interest, a binding contract, a fiduciary duty, or some other legally enforceable arrangement. Practical ability suggests a close relationship, or modicum of control that falls short of a legally recognizable right.

The evidence cited by CRI does not establish that Gemplus has the legal right to obtain documents from GISA on demand. Gemplus does not share any ownership of GISA, and the companies do not have the same stockholders. The fact that the Gemplus president sits on the GISA management committee does not establish an interlocking corporate structure, and does not prove that the Gemplus president has the authority to demand documents from GISA. CRI has made no showing that Gemplus can, in the ordinary course of business, require GISA to give it documents. Furthermore, CRI's has not demonstrated that Gemplus served as GISA's agent when contracting with

---

[3] To support its argument, CRI cites *Choice-Intersil Microsystems, Inc. v. Agere Systems*, 224 F.R.D. 471 (N.D. Cal. 2004). This court declines to follow *Choice-Intersil* because it relies entirely on the decision in *Camden Iron & Metal v. Marubeni America*, 138 F.R.D. 438 (D.N.J. 1991), which itself applied the "practical ability test" explicitly rejected by the Ninth Circuit in *In re Citric Acid Litigation*, 191 F.3d at 1107.

Visa, or that the two companies acted as one unit in business transactions. CRI's evidence would likely be sufficient under a "practical ability" standard, but its showing falls short under the Ninth Circuit's "legal right" test. Because CRI has not demonstrated that Gemplus has "control" over documents possessed by GISA or its sister corporations, Gemplus is not required to produce such documents.[4]

## II.  Document Requests

The second question before the court is whether certain CRI document requests are overly broad, and to what extent Gemplus must produce responsive documents. At issue are Requests Nos. 6, 7 and 9, requiring the production of documents and communication relating to CRI, DPA Countermeasures, DPA Testing, Visa Smart Cards, *or* the Countermeasure Patents.

### A.  Parties' Arguments

CRI defends the breadth of these requests, arguing that information about DPA and CRI not specifically relating to Visa Smart Cards may be relevant to determine the extent of use of its patented inventions in the broader Smart Card market. Likewise, CRI argues that information about Visa Smart Cards not relating to CRI or DPA is relevant to determine the extent of Visa's influence and control over this broader market.

CRI also takes issue with the search methodology used by Gemplus to find responsive documents. CRI claims that Gemplus's practice of scanning electronic files for the specific terms mentioned in the requests will not catch every responsive document.

---

[4]This includes documents responsive to CRI's document requests Nos. 28 and 36, which demand all sales figures by country. Gemplus has already provided sales figures for the US and Canada, and states that figures for other countries are in the sole possession of GISA. Because Gemplus does not control GISA's financial documents, CRI's motion to compel production responsive to these requests is denied.

Gemplus's primary objection is that CRI's document requests reach irrelevant material. It claims that communications relating to Visa Smart Card programs that do not relate in any way to DPA countermeasures are not relevant to this case. It makes the same argument for documents relating to DPA countermeasures that have nothing to do with Visa Smart Card programs.

**B.     Analysis**

As noted above, this case involves the alleged infringement of specific patents all relating to DPA countermeasures in Visa Smart Cards. With respect to obtaining documents from third parties, it is that specific claim which should shape the discovery. That is, requests by CRI to Gemplus must be limited to documents in some way relevant to DPA countermeasures linked to Visa Smart Cards.

In response to request No. 6, Gemplus must produce all documents relating to communications between Gemplus and Visa relating to CRI, DPA countermeasures, DPA testing, or the Countermeasure patents, that are *related to Visa Smart Cards*.[5]

Requests Nos. 7 and 9 should be treated in the same way. The information requested is relevant, but only as it relates to Visa Smart Cards. Gemplus should produce all documents relating to communications between Gemplus and silicon vendors, chip suppliers, card manufacturers, banks and financial institutions relating to CRI, DPA Countermeasures, DPA Testing and the Countermeasure Patents, that are *related to Visa Smart Cards*.

//

//

//

---

[5] The phrase "related to Visa Smart Cards" used here and in later paragraphs is meant to modify each item in the preceding list. To be responsive, a document does not have to "relate" exclusively to Visa Smart Cards, nor must it explicitly refer to the words included in these requests. Gemplus should ensure that its search terms target all documents required to be produced by this order.

6

**III.     Attorney's Fees**

Gemplus requests that the court order CRI to pay the attorney fees it has accrued in connection to the subpoena and this motion.  A court may impose sanctions if a party responsible for the issuance of a subpoena has not taken reasonable steps to avoid imposing an undue burden or expense on a person subject to that subpoena.  FED. R. CIV. P. 45(C)(1).  The court is not convinced that these conditions are met.  CRI made good faith efforts to meet and confer with Gemplus about the subpoena, and has also paid for the cost of copying documents associated with the production.  Therefore, Gemplus's request for attorney fees is denied.

### CONCLUSION

CRI's motion to compel is granted in part and denied in part.  Gemplus will produce the documents required by this order, as well as documents and information it has already agreed to produce, by September 2, 2005.

**IT IS SO ORDERED.**

Dated:  8/4/05                                                                    /s/ Howard R. Lloyd
                                                                                         HOWARD R. LLOYD
                                                                                         UNITED STATES MAGISTRATE JUDGE

7

THIS SHALL CERTIFY THAT A COPY OF THIS ORDER WILL BE SENT TO:

Laurie Michelle Charrington, lcharrington@fenwick.com

Darren E. Donnelly, ddonnelly@fenwick.com,

Michael A. Duncheon, mduncheon@hansonbridgett.com, ypete@hansonbridgett.com, CalendarClerk@hansonbridgett.com

J. David Hadden, dhadden@fenwick.com

Martin F. Majestic, MMajestic@hansonbridgett.com, IPFilings@hansonbridgett.com

Lynn H. Pasahow, lpasahow@fenwick.com

Alexandra V. Percy, apercy@hansonbridgett.com, rcarrillo@hansonbridgett.com; CalendarClerk@hansonbridgett.com; wchan@hansonbridgett.com

David Douglas Schumann, dschumann@fenwick.com, ncarroll@fenwick.com

Ryan Aftel Tyz, rtyz@fenwick.com, icampos@fenwick.com

Marshall C. Wallace, mwallace@reedsmith.com

Garner K. Weng, gweng@hansonbridgett.com, lbucsit@hansonbridgett.com

* Counsel are responsible for providing copies of this order to co-counsel.

Dated:  8/4/05

                                                       /s/ RNR
                              Chambers of Magistrate Judge Lloyd